141389, Southern Snow Manufacturing versus Snow Wizard. You still want waters whenever you're ready? Waters, too. A bit of a warning. I tend to speak really softly and fast. So if you can't hear me, you don't understand. I appreciate you coming. Don't speak too softly. I'm in a hurry of hearing you, okay? Okay. I have a partner like that. Your Honor, John Waters. I represent Hanover Insurance Company. We're here today not on a patent issue or a trademark issue specifically, but on insurance coverage. Specifically under Louisiana law. Everyone now agrees that Hanover has no duty to indemnify Snow Wizard for any of the claims of Southern Snow because there is no coverage for that claim. I use the word coverage advisedly because coverage has two points, two prongs of this fork. There's a duty to indemnify, that is what the insurance applies to, and a duty to defend if the insurance applies. So the only issue really overall is whether there was any duty to defend was triggered and whether Hanover can terminate or cease that duty, that defense, once the undisputed fact shows there's no possibility that the insurance applies. It seems like the only real question for us is did you in the settlement agreement agree in exchange for $20,000 plus you agreed to defend them through these three suits in exchange for them dropping the claims about phone, phone, whatever, whatever, whatever. So it doesn't seem that the question before us is does your insurance agreement or the word coverage in general require you to defend. You may be exactly right on all of that, but that doesn't seem like that's the point in front of this court. It seems to me that the basis for the lower court's decision was that you certainly didn't have to bind yourself in the settlement agreement to continue to defend their suit, but you did. That was her view. That was her view. And so you tell me why, and please look at the language of the settlement agreement, because I'm a bit of a plain language kind of gal when it comes to contracting. I feel like, quite frankly, as between the two parties, you all were the more sophisticated party. You all were the contract drafter to a large extent. So tell me why the plain language of the contract, why does she have it wrong in terms of what it means with a reference to the language of the contract? First, let me clear something up, and I think we said it in briefs. We do not claim that that settlement agreement is ambiguous. We do not. That's not our argument. We say simply that Judge Brown misinterpreted it. The last minute, three days before trial, she issued this opinion, and the settlement language says we will provide a defense, but we reserve our right. Show me where the language is in particular. That's not the language I'm talking about, is it? Which language are you talking about? The settlement agreement. I don't have it in front of me. The settlement agreement says. You might want to get it, because we're going to be focusing on the language. So you probably want to have a copy of it. Well, it's at A1511, I believe. I think you brought your record. It's the paragraph that says Hanover Insurance Company's position on coverage in this matter and its undertaking to defend. I think it's A1511. Hanover Insurance Company's position on coverage in this matter and its undertaking to defend There is no way to not waive any other policy, defense, or legal rights. Hanover Insurance Company reserves the right to amend or alter its position on coverage at any time. So the Defense Court judge is saying, although you're correct that as a matter of insurance law, coverage includes indemnity and duty to defend, you chose to separate the two out in this contract. And having separated the two out in this contract, you live with the consequences of the separation. Clear and simple as that. And you said the contract is not ambiguous. I think Judge Moore was saying she agreed it was not ambiguous. And the contract separated the concepts of indemnity and the concept of the duty to defend. And you reserve the right to back away on the indemnity, but not on the right to defend. OK. Good. And that, sir, is so painfully clear from the decision below in the briefs that you should be on top of that. I'm on top. And not need to go get the appendix to read it. Well, I... But now you have it. I have it. And I thought I had it memorized. I have it memorized. And it's not ambiguous, right? No, I don't agree. I agree that it's not ambiguous, but I disagree on your interpretation. And I disagree for this reason. Coverage has to be understood. It's a technical term. This is insurance. Sui generis. Coverage has to be understood in the terms that it's met. Coverage agreement says that the insurance applies to certain claims, and we have a duty to defend those claims to which the insurance applies. Coverage has to be understood in the context of the fit, if you will. Well, the thing is, if you hadn't written in the words in the undertaking to defend, if those three words didn't exist in the language I just read to you from your settlement agreement, you'd have a real nice, strong position. But because at arm's length, for $20,000 of consideration or whatever, you chose to insert those three words, whoever put those three words in creates a little hiccup for you. Big hiccup. Well, big or small. Opposition is. But your argument is that when the contract would say you reserve the right to amend or alter its position on coverage, that includes undertaking to defend. Sure. Because we incorporated that language. We incorporated the reservation of rights. What's the purpose of the three words undertaking to defend in the contract? What was the reason for having introduced those three surplusage words from your perspective? Totally unnecessary, because they are subsumed in the position on coverage. Yet they were written into the contract. Why? Because we were undertaking to provide a defense from the point that we recognized. As you were legally obligated to do under the notion of coverage. Right. But the question is, when does that duty cease? Does that undertaking cease at some point? You reserve the right to say when coverage would cease. Right. Coverage being understood as the insuring language, the coverage language which includes indemnity. Let me ask you this question. Let's assume that this particular ground used by Judge Brown, I think it was, to rule against you didn't exist. And her only other ground was the independent ground, which, if I understand correctly, was she thought as a matter of equity or fairness it would be unfair to leave Snow Wizard without lawyers right at the eve of trial. Right. Right. Now, assume that was her only ground of decision. I think, maybe you can convince me I'm wrong, I think I would be reviewing those findings for abuse of discretion. Right. Is that right? Right. That's a hard hill to climb, isn't it? I'll start with the preface of this. Okay. I don't mean to be rough on you. No, that's okay. I'm just trying to identify what I thought were the two points that you lost on this issue. That's perfectly okay. Judge, I kind of figured I was going to get a lot of questions, and I'm happy to have them. Hanover had been trying to get out from under this duty to defend since 2011, March of 2011, when it went through discovery, found out that the plaintiff couldn't support the disparagement claim and filed the most restrictive judgment. And Judge Zane granted, but held that we had a duty to defend, not under the settlement agreement, but under his interpretation of the insurance language of the policy. The settlement agreement didn't come up until 2012. Well, and he was wrong, and that kind of stuff happens. Right. Right? It happens all the time. You get a denial of summary judgment, and then you get a settlement. And it may well be that had someone pursued through appeal the original decision, rather than settle, they would have been vindicated. But you didn't do that. You didn't appeal his decision. Instead, you decided to settle and accept responsibility for a portion of the defense. We tried in 2011, when Judge Zane, May of 2011, when Judge Zane ruled that way, we immediately asked for reconsideration, denied sui sponte. We asked for the right to intermediately appeal, denied sui sponte, and then the case got shut down for a little while. And when it reactivated, it was transferred to Judge Brown. Now, we tried to get out from under it. In other words, we've been trying to get out from under it for all these years. And then we filed a motion for summary judgment, again, really a motion for reconsideration, as Judge Brown says, in November 2012. And Judge Brown, God bless her, was saddled with this case at the last minute as a new judge. And you can tell she's very conscientious. She takes her time. She took her time. She didn't rule until January 31, 2013. Now we're two weeks before trial. To your question, Judge, I think it's inequitable to make head or pay for a defense it didn't owe. Because the court doesn't want to handle it another way, like continuing the trial. They would not have been left lawyerless. They had two other lawyers. They could have retained the lawyer that handled it. How much did you know? I saw that part. They got two-thirds of the team left. But as you well know, sir, sometimes members of the team are not equal in life. I do. And that's why God invented continuances. It wouldn't have mattered in the scheme of things greatly to continue this for a month or two or three. But to put this off on Hanover is impactful. But the case had been hanging around the system for a long time. It had been since 2006. Complaints fall out of the sky like snow cones in a circuit. So when you talk about abuse of discretion, I hate to use that term because Judge Brown really did a fantastic job on this thing. I think she got that wrong. And to your point, Judge Moore, and to yours, Judge Clevenger, the assertion of these three words, as you said, is an attempt to clarify that we're going to undertake the defense, but we've got these issues open. And take a look at what the parties did afterwards. Hanover jumped in. Not me, I wasn't in the case. Then jumped in, took depositions, filed a motion for summary judgment that there was no disparagement claim, which was to the benefit if it's insured, too, by the way. And then filed a motion for summary judgment saying we don't have a duty to identify and we don't have a duty to defend thesis. So, and yet defense to that wasn't that we have a settlement agreement. That didn't come up until 2013, 12. So the part Hanover would not have had to do the discovery that ultimately led to the motion for summary judgment had, as Judge Moore posits, they agreed to defend to the end. Okay, why don't we go ahead. I'm sorry. I was going to ask one practical question. I'd like to know, if I can, where the money is or where the money is going in these cases. If you prevail on your appeal, then you didn't have any duty to defend the three, the suits up until the 2011 suit, right? So that means that Snow Wizard owes you some money? Is that right? Right. And if you defeat them on their cross appeal, saying you had no duty to defend, then they owe you some money. No, the cross, yeah. The cross appeal is on the 2011 case, the main cross appeal. Right. We never did, we never did spend any money on that case. We did not accept the duty to defend because there was no disparagement claim. So what they're hoping for is that you owe them the money for their attorney suits. In that case. And what they're trying to do in the consolidated cases. Don't let me eat up any more of your time. Okay. Just close with this. The one thing I don't think I adequately briefed was this consolidation argument. Consolidation is a tool for judicial efficiency. They're arguing your Spray X case, which I think you were on the panel with Judge Clevenger. Yes, consolidation is a tool for judicial efficiency and convenience, but it doesn't change the character of the cases. And that's the Supreme Court case, Johnson v. Manhattan Railroad. I'll just give you a quick follow-up. 289 U.S. 479. 1933 Supreme Court decision. Yes, there's been a lot of water under the bridge, but if you're looking for cases that are cited, they're still signing it up until today, as recently as April 2015. It's still good law. Thank you. Do we still have a couple minutes of rebuttal? Okay. Let's hear from Mr. Morris. Your Honor, first of all, in order for Hanover to get some relief on the duty to defend in the first three consolidated cases, first of all, the court would have to reverse the district court's order enforcing the settlement agreement. All right, but if we rule against your adversary on the appeal, this issue is moved, right? Yes, if you affirm the order. Exactly. So if your colleague can't prevail here, then this particular issue is moved. I think so. And it's sort of your main cross-appeal has to do with the 2011 lawsuit held no coverage, including indemnity, including duty to defend, right? Correct, Your Honor. And that's the one that you continue to litigate and you'd like to have them pay legal fees. Yes. Maybe from my perspective, you probably ought to put your eggs in that second basket. Yes, Your Honor. And the issue of the duty to defend in that case, the 11-1499 case, goes back to the language of the policy, okay? And the policy says that Hanover shall defend Snow Wizard against any suit seeking damages. Any suit seeking damages? Any suit seeking those damages. Any damages. So like if one of your delivery guys ran a truck into somebody, the policy would cover tort damages? Well, the insuring agreement provides that the policy covers claims for damages to which this insurance applies, and that Hanover shall defend the insured against any suit seeking those damages. I thought it was for malicious prosecution. Well, the policy applies. And that's why I asked you about the tort accident. It's not just any, it's not an umbrella policy, any and all forms of liability. No, we contend that one of the claims in the 11-1499 suit was for malicious prosecution, which is explicitly covered in the personal and advertising injury portion of the Hanover policy. Right, but that, you will rule against you on that grounds, right? Yes, Judge Brown ruled against because the You can't get into that policy unless you can get into it through malicious prosecution, right? Yes, we don't contend that any of the other claims were covered under this policy. But, as far as malicious prosecution, it was covered. The only reason Judge Brown found that it wasn't was because the complaint was unclear, didn't specify that the suit, the alleged malicious prosecution suit had terminated in favor of the plaintiff. It didn't say one way or the other. And our position is that in that situation, under Louisiana law, you construe the complaint liberally in favor of the insured. And then disclose, there's no dispute that every other element of malicious prosecution claim is alleged in that complaint. So, what Judge Brown did was, what Hanover argued is that the court should determine whether or not the complaint stated a claim for relief, which could be granted on a malicious prosecution claim, which she found it didn't because of the missing element of the termination of the suit. And is it a de novo standard of review on this particular question as to whether or not the complaint did allege a malicious prosecution claim? Yes, it is de novo. Because it was a summary judgment and also because it's a legal question. Yeah, it's a legal question. It's an interpretation of the policy and the four corners of the complaint. So, that's our position on that, that the complaint surely stated a claim for malicious prosecution at least rudimentarily. If there was defects in that, then Hanover should have jumped in and defended on that basis. And there's ample case law stating that. We cited it all in there. In addition, or in the alternative, this suit 111499 was consolidated with the other suits in which there is no dispute. In fact, there's a final judgment that Hanover owed a duty to defend. And once this suit, 111499, was consolidated with those suits, then they fall within the policy's definition of a civil proceeding in which claims were made to which this insurance applies. I have a dumb question. Under Louisiana law, suppose that there were multiple discrete claims in a complaint and everyone agreed that coverage would apply to one, but coverage would absolutely not apply to the other. Do they have some duty to defend the entire suit, or is it limited to the claim for which they could be liable? They absolutely have a duty to defend the entire suit, even claims which are not covered. And regardless of the outcome of the suit, once that duty to defend is triggered, and that's the holding of the seminal Louisiana Supreme Court case, Zarniecki, I believe it's called, which says exactly that. That once the duty to defend is triggered as to any claim, the insurer has a duty to defend the insurer against all the claims asserted in that proceeding, even claims that are not covered. Let me ask you a question about Louisiana law. You all from Louisiana know better about that than we do, but the law seems to say that the duty to defend is broader than the duty to indemnify. Correct. So I'm just sort of puzzled. I mean, what incentive does an insurance company have to defend a lawsuit vigorously and to the bitter end when it has no possible liability? As a matter of public policy, I mean, you're saying to the insurance company, guess what? There's no way, Jose, you're going to pay a penny under this policy. But just send your best lawyers over from your best law firm to defend this claim anyhow. That doesn't make any sense, does it? I think it makes a lot of sense, Your Honor. Do you really think you're going to get the finest representation out of somebody that can't possibly owe you a nickel? Well, we're getting the representation out of the lawyers who are hired by the company. The insurance company also has a duty to hire counsel who does not have a conflict in that regard. But I'm just talking about your emotion. I mean, firing yourself up to defend your client. Are there any cases in Louisiana law where somebody, the insurer, has filed a lawsuit against the insurance company saying, you guys were laggards? Once you learned that you had no possible liability under the policy, you sent a bunch of junior varsity youngsters over here to litigate this case, and they made a bunch of mistakes, and I was poorly represented. Are there any cases like that in Louisiana law? Not a single one that I can think of where someone complained about the performance of the lawyers, other than cases in which the lawyers had a conflict of interest because they also represented the insurance company. I'm just thinking about the basic notion of saying to somebody, even though you can't possibly be liable, we're expecting you to pull your really hard. Well, and also the liability would be to the opposing party. So the plaintiff's interest is in that defense. I mean, the defendant's, the insurer's interest is in that defense. So, and the jurisdictional question that the court asked parties to respond to was interesting because it really turned upon the fact that that 11-1499 case, which did include a patent issue, had been consolidated with the three prior cases which had no patent issues, and it really turned upon the fact that this court treats consolidated cases as one case, as one unit, for purposes of jurisdiction. And our position is that the same analysis should apply for purposes of insurance coverage. And in fact, again, if you go back to the policy language, as you should do under Louisiana law of insurance contracts, the definition of suit, as in shall defend any suit seeking those damages, is broad, is very broad, and certainly broad enough to encompass this consolidated civil action in which 11-1499 is a part. Well, we used to have a rule that if there was a patent issue lying around in there somewhere, like in a counterclaim, that that would sustain jurisdiction for us. And we got whacked down by the Supreme Court saying we couldn't do that anymore. Yes. We have a pre-Holmes case called Inetron, in which you're right when you said you take all these cases together, but there's an open question as to whether or not Inetron survives Holmes, I think. Well, I think Holmes, and I understand Holmes, but Holmes has really no bearing on this. Well, because your patent issue didn't come up in a counterclaim. Exactly. It came up in the complaint itself. But it came up in a separate case that was whacked on, the way a counterclaim is a separate freestanding case that gets whacked on to the main case. And so in that situation, then the issue, I think, is determined by this court's jurisprudence treating consolidated cases as one unit for purposes of jurisdiction. But we also have jurisdiction, don't we, through the law of the case doctrine? Well, that's true too. And both of you, or at least one of you in your letter brief, pointed out the law of the case to us, that this case has already been decided, if you will, on the jurisdictional issue by the transferor circuit. By the transferor circuit, and also by this court in its previous decision on this case. Well, when we had the case up here before, we had a patent case front and center. Yes. And that patent case was the exact same. Well, it was carrying with it some non-patent law claims. Right. Leto, as I recall, for rags and those other people. Yes. Yes, Your Honor. That patent case is the exact same case that is before the court on this issue of the duty to defend. So do you want to save some rebuttal for your cross-examination? Yes, Your Honor. Okay. Thank you. To Judge Moore's question, yes. If in a lawsuit, if in a lawsuit there are multiple allegations, 79 allegations, and one of them is covered, would be covered, would be something that the police would respond to, there is a duty to defend all those allegations. There is. But that's not the situation we have in 11-1499. We have a separate lawsuit. Now, that took place in the consolidated cases. There is only one claim in the consolidated cases, and they pretty much mirror each other. That is covered. That was a possible claim for disparagement. That was not excluded. So, Hanover picked up the defense. Are you trying – I don't understand what the legal point you're trying to make is. Are you trying to say that while it's true in a single suit, even if there's three different bases, Hanover could be liable for coverage under one. They have to defend all three. However, in a consolidated case, they don't. What is the legal point you're trying to make by pointing these facts out? 11-1499 has no allegations that are covered. They didn't allege – But the cases have been consolidated. Yes. Now just one case. No, they're not. I disagree. They are consolidated for the purposes of convenience and judicial economy. That's the purpose of consolidation. That's what the Supreme Court says. But it doesn't change the character of the case. They still remain separate cases, and they are not merged in that sense. Now, when you get to the Spray Act situation, for purposes of whether you're going to take a piecemeal appeal, for purposes of convenience – So back up. Are you saying that when these cases are consolidated, you only have a duty to defend the one that has the one claim that might be disparagement, but you don't have a duty to defend the other two? You don't have a duty to defend the other suit, and that's in judgment. And they were handled separately. Are you talking about the cross appeal now? Yes. I'm just not following where you are. The cross appeal. The cross appeal. You already won on this. That's the one we won on. You're just defending. Okay. And we have a new argument now that they were consolidated, and I'm addressing that. One final thought, because time has expired. No. Unless you have a question, you're on. Thank you. Thank you. I'm not sure how much more you really have to say. Well, I understand where Mr. Waters is going back to the Supreme Court case in which it stated or held that consolidation did not transform a civil action into a different action by consolidating with other actions. But that's not really how you analyze the issue here. Here you look at the language of the policy first. And again, the duty to defend is determined by the policy language in which Hanover must defend against any suit seeking those damages. And the reason for that… But none of these three suits fall into that policy. That's what was decided by the decision on appeal to us. And the only reason you have their defense at all is because of the settlement agreement. Well, Judge Zaney originally found that all three of those suits did trigger the duty to defend. And that decision is final and res judicata. None of those three suits, not the 11th suit. Correct. Because the 11th suit came after. Exactly. It came after. But we actually… And that's what distinguishes this case from all those cases they cited. We filed a motion for summary judgment on the issue of duty to defend. Judge Zaney granted it. It has not been appealed. It was not reconsidered and reversed by Judge Brown. It's final. And so they have a duty to defend. And that's why, you know, even without the settlement agreement, you then fall under… Well, there was a motion to reconsider, wasn't there? That motion to reconsider was a different ruling by Judge Zaney. I thought Judge Brown greeted a motion to reconsider Judge Zaney's ruling. A different ruling. What do you mean a different ruling? Judge Zaney first ruled, granted our motion for summary judgment, that they owe a duty to defend.  Well, put it this way. Judge Brown understood Hanover's motion for reconsideration to be a motion to reconsideration everything that Judge Zaney had done. You can't read her decision any other way. Otherwise, it's all surpluses and a waste of effort. That's my view of that issue. No, I think it was very specifically reconsideration of very specific orders that Judge Zaney had entered. And those were orders denying Hanover's motion for summary judgment to terminate the defense. But Judge Brown released them from the duty to defend. Yes. Okay. And then from your friend and your colleague, your adversary's point of view, with a slight of hand, once she gave back, she took away. Well, it was… And you're happy with that decision? Yeah, I believe that's… Right. But even if you… Yes, Your Honor. Okay. Thank both counsel and the case is submitted.